IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRENT LYNCH,<br><br>Plaintiff,<br><br>v.<br><br>SCHEDULE A DEFENDANTS,<br><br>Defendants. | Civil Action No. 26-cv-79<br><br>(Judge Colville) |

**RESPONSE TO ORDER TO SHOW CAUSE**

In its September 30, 2026, Memorandum Order, the Court denied the motion filed by the Plaintiff Brent Lynch ("Lynch") for a temporary restraining order and ordered Lynch to show cause "as to why [his] claims should not be severed and why every Defendant except for the first-named Defendant . . . should not be dismissed from this case for misjoinder." (the "Order," ECF No. 14, at 18.) The Court described the Complaint's joinder allegations as "conclusory assertions unsupported by sufficient facts," directed Lynch to address this Court's decision in *Qian*, and directed him to identify which Defendants infringed which of his copyrighted works and "to further set forth a specific factual basis for a connection between each of the Defendants." (Order at 14, 16, 18–19.)

This action names 189 Defendants, each of which offered unauthorized copies of one or more of Lynch's five registered works through a storefront on Amazon, Temu, or Walmart. (ECF No. 1 ¶ 13; ECF No. 13-1.) Exhibit 1 to the accompanying Declaration of Stanley D. Ference III ("Ference Dec.") is the chart the Court requested. It identifies, Defendant by Defendant, the work each one infringed, and it shows that this is overwhelmingly a one-work case: 173 of the 189

Defendants copied a single painting, *Cigar Bar Evening Lounge*. Exhibit 2 links sixty-two of them through shared catalog listings, invented brands, listing titles, and common ownership, a partial list compiled without the benefit of discovery. (*See* Part IV, *infra*.) No Defendant has yet been served or appeared to contest joinder. Under these circumstances, adjudicating Lynch's claims in this single action is not only permissible under Rule 20, but it is by far the most efficient and economical way to resolve them.

Joinder is permissible under Rule 20 because the Defendants' infringement of a single artist's works on the same marketplaces, by storefronts that offer identical or near-identical product listings and other overlapping facts, easily satisfies the requirement under Rule 20 that joined defendants be the subject of claims arising out of a series of transactions or occurrences and share at least one common question of law or fact. Indeed, the Copyright Act contemplates that defendants committing concurrent infringement would be joined in a single action.

Furthermore, although the Court has indicated its intention to dismiss every Defendant except the first-named, that would be the most prejudicial and least efficient manner of proceeding. Dismissal would require 188 new suits, at a cost of more than $76,000 in filing fees, and renewed motions in each for the injunctive relief and alternative service already before the Court, all of which the Court would then have to manage. The second-best option, severance into separate actions, one for each Defendant, that continue on the existing record, would at least preserve the work already done. In fact, the Third Circuit recently vacated a dismissal where the court did not explain why severance could not cure any misjoinder. Lynch therefore respectfully requests that the Court hold joinder proper or, at a minimum, sever rather than dismiss or drop defendants.

## I. The Complaint Complies with Rule 20.

Rule 20(a)(2) permits joinder of defendants where the claims against them arise "out of the same transaction, occurrence, or series of transactions or occurrences" and present "any question of law or fact common to all defendants." Fed. R. Civ. P. 20(a)(2). Joinder is meant to "promote trial convenience and expedite the final determination of disputes." *Trinity Indus., Inc. v. Greenlease Holding Co.*, No. 2:08-1498, 2015 WL 1608618, at *2 (W.D. Pa. Apr. 10, 2015). "The impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966)).

The "same transaction or occurrence" requirement is measured by a flexible "logical relationship" test, which "has been viewed liberally to promote judicial economy" and is satisfied where separate trials would "involve a substantial duplication of effort and time by the parties and the courts." *Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 389–90 (3d Cir. 2002). Two settled principles frame the analysis. First, in assessing Rule 20, the court "[a]ccept[s] [the] allegations as true, and draw[s] from them all reasonable inferences" in the plaintiff's favor. *Sanders v. Rose*, 576 F. App'x 91, 95 (3d Cir. 2014). A plaintiff may plead these allegations "upon information and belief" where the relevant facts are "peculiarly within the defendant's knowledge or control," so long as the allegations are not "boilerplate and conclusory." *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267–68 (3d Cir. 2016). Second, the court may not resolve joinder by categorical assumption; it "must provide a reasoned analysis that comports with the requirements of the Rule, and that is based on the specific fact pattern presented by the plaintiffs and claims before the court." *Wood v. Eiazuiks*, No. 25-2340, 2026 WL 1397312,

at *3 (3d Cir. May 19, 2026) (quoting *Hagan*, 570 F.3d at 157); *see also Avenatti v. Fox News Network LLC*, 41 F.4th 125, 131 (3d Cir. 2022).

### A. <u>Courts in This District Have Upheld Joinder on Materially Similar Allegations</u>.

The earliest decision in the Western District involving joinder in a Schedule A case is *Doggie Dental, Inc. v. Cdoffice*, No. 2:21-cv-00271, 2021 WL 5411432 (W.D. Pa. Sept. 7, 2021). In that case, two defendants filed a motion to dismiss for improper joinder. Judge Hornak denied the motion to dismiss because the complaint "includes allegations of coordination between the Defendants." *Id.* at *1. The complaint alleged that, "[o]n information and belief, Defendants are working together to manufacture, arrange the manufacture of and/or sell and otherwise distribute the Infringing Products," that they were "employing and benefiting from substantially similar, paid advertising and marketing and advertising strategies," and that they had "cooperated, communicated their plans with one another, shared information, and coordinated their efforts." *Id.* The plaintiffs also submitted a declaration stating that certain defendants manufactured counterfeit goods and supplied them to other defendants. *Id.* at *4. And while the defendants argued that the allegations were conclusory boilerplate statements, the court held that "these allegations provide more than a conclusory boilerplate statement that defendants were working in concert. Rather, they explain *how* the defendants allegedly worked together in a common scheme to profit off the unauthorized use of [plaintiffs'] intellectual property." *Id.* Because the information needed to substantiate those allegations, such as "records of any communications between defendants," was "peculiarly within the control" of the defendants, the court held that the allegations "must at this stage of the case be credited." *Id.*

More recently, in *Jacobs v. Xuchengqian*, No. 25-cv-1403, 2026 WL 916227 (W.D. Pa. Feb. 24, 2026), five defendants argued that they were unaffiliated entities and were not properly joined under Rule 20. Judge Stickman found that the plaintiff sufficiently "pled that the defendants

worked in some degree of concert to engage in conduct that violates [the plaintiff's] copyrights" and the requirement of a common issue of law or fact was satisfied, as the plaintiff's "claims against each defendant will inevitably involve common questions of law and fact—e.g., [the plaintiff's] rights in the artwork at issue, whether the alleged infringement is actionable, etc." *Id.* at *2. The court then held that the allegations that the defendants had "cooperated, communicated, shared information, and coordinated their efforts," were "an interrelated group of infringers working in active concert," and "use[d] aliases to avoid liability," were "allegations of interconnectedness" that were "not merely boilerplate." *Id.* The court also noted that the moving defendants were represented by the same attorney and pursued a unified defense, finding "the joint representation of the Group A Defendants and the coordination of their litigation strategy to weigh against a determination of misjoinder." *Id.* Judge Stickman then denied similar motions for similar reasons in three other cases. *See Audit v. Decor*, No. 25-cv-1433, 2026 WL 916206 (W.D. Pa. Mar. 5, 2026); *Audit v. HH Temus*, No. 25-cv-1487, 2026 WL 916331 (W.D. Pa. Mar. 6, 2026); *Audit v. Holiday Decoration Posters*, No. 25-cv-1553, 2026 WL 916228 (W.D. Pa. Mar. 6, 2026).

In *Parson v. Sixinone*, No. 25-cv-1436, ECF No. 68 (W.D. Pa. Apr. 8, 2026), Judge Wiegand similarly denied a motion to dismiss for improper joinder brought by a group of defendants. The plaintiff there alleged that the defendants "have cooperated, communicated, shared information, and coordinated their efforts" to infringe his works, and he supported that allegation with a declaration from counsel about the interrelationships among the defendants. *Id.* The court then held, "Taking these allegations as true, the Court concludes that Mr. Parson has sufficiently demonstrated the 'logical relationship' required to meet the common transaction or occurrence requirement under Rule 20 and the governing Third Circuit Precedent." *Id.*

Most recently, in *Plout v. Ren Shiju*, No. 26-cv-1134, ECF No. 63 (W.D. Pa. Aug. 14, 2026), Judge Wiegand denied a motion to dismiss for misjoinder, relying on the complaint's allegations. The moving defendants asserted that they were "unrelated companies acting without coordination," and the plaintiff had alleged that the defendants "have cooperated, communicated, shared information, and coordinated their efforts in order to create an infringing marketplace[.]" *Id.* The court reiterated that "misjoinder is not a ground for dismissing an action" and that "[u]pon a finding of misjoinder, the proper remedy would be severance." It then held that, "[t]aking these allegations as true," the plaintiff had "sufficiently demonstrated the 'logical relationship' required to meet the common transaction or occurrence requirement under Rule 20." *Id.*

**B. <u>The Decisions Finding Misjoinder Are Distinguishable</u>.**

Five Schedule A decisions in this District have found joinder improper, but the allegations and records in those cases differ markedly from those here. Four of them rested on materially the same joinder allegations. In *Glitch Prods. Pty Ltd v. BaiHeShangMao*, No. 25-cv-727, 2025 WL 1899266, at *4 (W.D. Pa. July 1, 2025), and *Li v. Tianwide*, No. 25-cv-769, 2025 WL 1930169, at *3–4 (W.D. Pa. July 9, 2025), Judge Wiegand explained that the complaints in those two cases lacked allegations of a logical connection among the defendants and differed from cases in which the plaintiff "alleged the defendants were operating as a single ring of intellectual property infringers. That allegation creates a logical connection amongst the defendants in those cases that is lacking in this one." *Glitch*, No. 25-cv-727, ECF No. 49 (cleaned up). Similarly, in *Forcel Media Ltd. v. DecYI*, No. 25-cv-750, 2025 WL 1665586, at *3 (W.D. Pa. June 12, 2025), Judge Ranjan found that the complaint contained only "conclusory assertions unsupported by sufficient facts, and do not convince the Court that there is a connection among Defendants."

The joinder allegations deemed insufficient in those cases described how online infringers behave in general, not what the named defendants did. The *Glitch* complaint, for example, alleged

that infringers' stores "often share identifiers," that the infringing products "bear similar irregularities and indicia of being unauthorized," and that infringers "typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Glitch's enforcement." *Glitch*, 2025 WL 1899266, at *3. The complaints in *Li* and *Forcel* pleaded the same generic list of allegations. *Li*, 2025 WL 1930169, at *3; *Forcel Media*, 2025 WL 1665586, at *3. And when Judge Wiegand asked the plaintiffs in *Glitch* and *Li* whether they had any evidence of a relationship among the defendants beyond those generic allegations, they offered only screenshots of similar storefronts and declarations that "generally just repeat[ed] the allegations made in the Complaint." *Glitch*, 2025 WL 1899266, at *1, *3; *Li*, 2025 WL 1930169, at *1, *4. As shown below, the Complaint and the record here are different in kind.

The fourth is this Court's own decision in *Allseason Enterprises, LLC v. Mykyta Melnik, LLC*, No. 2:24-cv-00921, 2025 WL 2912630 (W.D. Pa. July 25, 2025). There, the Court observed that the plaintiff "has only raised one allegation" of a connection among the sellers, a single paragraph asserting, on information and belief, that they conspired and used similar photographs, trade dress, and label characteristics, and it was therefore, "on this record, unconvinced that there is a connection between the Defendants, let alone one that is shared by all of them." *Id.* at *6. The Order here uses the same words. (Order at 14.) But the record here supplies what the *Allseason* record lacked: as shown below, the Complaint pleads coordination in detail, and the evidence already ties dozens of Defendants together through hard identifiers.

The fifth is *Qian v. Individuals, Corporations, Limited Liability Companies, Partnerships, & Unincorporated Ass'ns Identified on Schedule A to the Complaint*, No. 2:25-cv-184-RJC, ECF No. 54 (W.D. Pa. June 9, 2026), where this Court held that allegations tracking the generic list rejected in *Forcel* (e.g., that infringers "typically communicate with each other through group chats

and websites") were "conclusory assertions unsupported by sufficient facts," and that the plaintiff "merely allege[d] that each of the Defendants have infringed the same patent in the same way." *Qian*, ECF No. 54 at 2–3, 6. Each holding rested on generic descriptions of how infringers behave; the record in this case is fundamentally different, as *Qian* itself anticipated in stating that the Court "would certainly entertain a consolidation or amendment request" upon a showing of connection among the defendants. *Id.* at 8. *Qian* also arose under the patent laws, where 35 U.S.C. § 299 restricts joinder beyond Rule 20, and relied on a § 299 decision, *Li*. *Id.* at 4–6.

### C. **The Complaint Contains the Allegations that Supported Joinder in the Cases Allowing Joinder and that the Courts Found Lacking in the Cases Disallowing Joinder.**

The Complaint pleads the same allegations that the courts found sufficient to support joinder in *Doggie Dental*, *Jacobs*, the three *Audit* cases, *Parson*, and *Plout*. Like the complaints in those cases, the Complaint contains multiple allegations regarding the cooperation and coordination among the Defendants, including that: the Defendant Merchant Storefronts "share unique identifiers, such as design elements and similarities of the unauthorized products offered for sale, establishing a logical relationship between them"; that offering the infringing products far below the price of the original while still turning a profit "requires an economy of scale only achievable through a cooperative effort throughout the supply chain"; that "Defendants are an interrelated group of infringers working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products"; that the Infringing Products "bear similarities and indicia of being related to one another, suggesting that the Infringing Products were manufactured by and come from a common source"; and that "Defendants use aliases to avoid liability by going to great lengths to conceal both their identities as well as the full scope and interworking of their illegal network." (ECF No. 1 ¶¶ 15, 17, 18, 34, 37.)

All three allegations credited in *Jacobs* appear in Lynch's Complaint nearly word for word. *Compare Jacobs*, 2026 WL 916227, at *2, *with* ECF No. 1 ¶¶ 4, 18, 34. And like *Doggie Dental,* which credited an allegation that the defendants were "working together to manufacture, arrange the manufacture of and/or sell" the infringing goods, 2021 WL 5411432, at *1, the Lynch Complaint alleges that the Infringing Products "come from a common source" and that Defendants' below-market pricing depends on "a cooperative effort throughout the supply chain." (ECF No. 1 ¶¶ 17, 37.) These are not generic descriptions of how infringers typically behave, which is what the courts rejected in *Glitch*, *Li*, *Forcel*, and *Qian*; they are allegations about how these Defendants concurrently operate. Furthermore, even without the benefit of discovery, Lynch has developed evidence linking sixty-two of the Defendants, through hard identifiers, to other Defendants or to a common owner. (Ference Dec. ¶ 9 & Ex. 2.) These allegations track or exceed those that courts in this District have repeatedly found sufficient to support joinder.

The Lynch Complaint goes further and pleads a civil-conspiracy count, alleging that the Defendants "knowingly and voluntarily entered into a scheme and agreement" to engage in "a concerted and collaborated effort to maintain the distribution, marketing, advertising, shipping, and sale of products that bear Plaintiff's copyrighted designs," and that each Defendant "understood and accepted the foregoing scheme and agreed to do its respective part." (ECF No. 1 ¶¶ 50, 52.) None of the joinder allegations rejected in *Glitch*, *Li*, *Forcel*, or *Qian* alleged a conspiracy among the defendants. The Order does not separately address the conspiracy count, and at this stage its allegations are taken as true. *See Sanders*, 576 F. App'x at 95. But joinder here does not depend on it. As explained below, Rule 20 and the Copyright Act contemplate joinder of separately liable infringers whether or not they collaborated with one another.

The Order also reads the Lynch Complaint's allegation that the Defendants act "often times as partners, co-conspirators, and/or suppliers" as tending to belie the next sentence's allegation that all of them are interrelated. (Order at 14–15 n.8.) The two sentences work together. The first describes the different roles that members of a single enterprise play: some act as partners, some as co-conspirators, and some as suppliers. The second alleges that every Defendant, whatever its role, belongs to "an interrelated group of infringers working in active concert." (ECF No. 1 ¶ 34.) An enterprise whose members play different parts is still one enterprise.

Even setting the Complaint's coordination allegations aside, the Complaint meets both elements of Rule 20(a)(2). First, when a group of sellers concurrently floods the market with copies of the same artist's works, that convergent conduct is itself a "series of . . . occurrences," because its aggregate effect is a common displacement of the market for those works. The Complaint pleads exactly that: Defendants' acts of infringement "constitute a collective enterprise of shared, overlapping facts." (ECF No. 1 ¶ 46.) Second, every claim presents common questions of law and fact, such as Lynch's ownership of the registrations at issue and what damages follow under the Copyright Act. *See Laika, LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 833 F. Supp. 3d 918, 921 (N.D. Ill. 2026) (finding "a question of law common to all the moving defendants" where each sold posters alleged to infringe the same copyright). The allegations of the Complaint therefore meet the requirements of Rule 20, and joinder is proper.

**D. <u>The Third Circuit Has Rejected the Joinder Approach in *Forcel*</u>.**

In the Order, the Court relies on and quotes extensively from Judge Ranjan's order in *Forcel Media*, 2025 WL 1665586. (Order at 13–16.) However, the Third Circuit's ruling in *Wood*, 2026 WL 1397312, counsels against reliance on *Forcel*. One day after the order in *Forcel,* Judge Ranjan issued an order to show cause in *Wood v. Eiazuiks*, No. 25-cv-800, ECF No. 13 (W.D. Pa. June 13, 2025), directing the plaintiff to show cause why the case should not be severed for

misjoinder "for substantially the same reasons that were articulated in *Forcel*." (*Id.* at 1–2 (cleaned up).) After the plaintiff responded, Judge Ranjan dismissed the complaint under the provision in his standing order requiring the complaint to name "a single defendant or group of defendants acting under the same operator." *Wood*, 2026 WL 1397312, at *1–2. On appeal, the Third Circuit vacated the dismissal, holding that a district court must ground its Rule 20 determination on the particulars of each case and must explain its reasoning in its opinion. *Id.* at *3–4. Reiterating that misjoinder is "not a ground for dismissing an action," the Third Circuit vacated and instructed that the district court "may wish to review its Standing Order." *Id.* at *3 & n.5. Accordingly, the Third Circuit's vacatur in *Wood* of a decision applying *Forcel* implicitly rejects that approach.

### E. **Congress and the Federal Rules Anticipated That Jointly and Individually Liable Infringers Would Be Joined in a Single Action.**

Not only is joinder of the Defendants proper under Rule 20, but it is consistent with the scheme that Congress intended when it passed the Copyright Act. The Act provides for an award of statutory damages "for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally." 17 U.S.C. § 504(c)(1). The House Judiciary Committee explained how that provision operates when multiple defendants are sued together: "Where the infringements of one work were committed by a single infringer acting individually, a single award of statutory damages would be made. Similarly, where the work was infringed by two or more joint tortfeasors, the bill would make them jointly and severally liable for an amount in the [statutory] range. However, where separate infringements for which two or more defendants are not jointly liable are joined in the same action, separate awards of statutory damages would be appropriate." H.R. Rep. No. 94-1476, at 162 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5778, *quoted in Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 946–47 (9th Cir. 2011). Congress thus

anticipated precisely the case before the Court: a single action in which some defendants may prove jointly liable with one another, while others answer only for their own infringements, with statutory damages awarded according to each infringer's liability on a per work basis.

The same report resolves the Court's concern that "five separate copyrighted works are at issue in this case" (Order at 14), explaining that "an award of minimum statutory damages may be multiplied if separate works and separately liable infringers are involved in the suit." H.R. Rep. No. 94-1476, at 162. And because the statute measures statutory damages "with respect to any one work," it presupposes actions involving more than one. 17 U.S.C. § 504(c)(1). Congress thus contemplated a single action spanning multiple works as well as multiple defendants.

Courts across the country read the House Report the same way. *See Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 143–44 & n.11 (5th Cir. 1992) (quoting the House Report in a case involving two different defendants each committing five separate infringements of five different works); *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 194 (1st Cir. 2004) (joining "[t]he prevailing reading in the circuits" that the number of awards "depends on the number of works that are infringed and the number of individually liable infringers"); *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 294 (9th Cir. 1997) (quoting the House Report's "joined in the same action" passage and sustaining separate awards against two stations that were not joint tortfeasors), *rev'd on other grounds sub nom. Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998); *Akanoc*, 658 F.3d at 946–47 (quoting the passage in full); *WB Music Corp. v. RTV Commc'n Grp., Inc.*, 445 F.3d 538, 540 (2d Cir. 2006) ("[T]he total number of awards of statutory damages that a plaintiff may recover in any given action depends on the number of works that are infringed and the number of individually liable infringers . . . ." (quoting *Venegas-Hernandez*, 370 F.3d at 194)).

The Federal Rules are built the same way. Rule 20 permits joinder of defendants against whom a right to relief is asserted "jointly, severally, or in the alternative" with respect to the same series of occurrences, Fed. R. Civ. P. 20(a)(2)(A), and it permits judgment "against one or more defendants according to their liabilities," Fed. R. Civ. P. 20(a)(3). The Rule thus contemplates jointly liable and severally liable defendants in the same action. *See United States v. Mississippi*, 380 U.S. 128, 142 (1965). What neither the statute nor Rule 20 requires is proof that every defendant coordinated with every other before they may be sued together.

The Court observed that the similarities among the Defendants' storefronts "point as much to 'copycat' infringement as to concerted action." (Order at 15.) Even on that view, sellers who each copied the same artist's works because they sell are the very separately liable infringers Congress authorized to be "joined in the same action." A rule permitting joinder only upon proof of coordination would subvert the scheme Congress enacted.

### F. <u>The Record Already Shows Connections Among the Defendants, and Discovery Will Likely Generate Further Evidence</u>.

Although Rule 20 does not require proof that the Defendants coordinated with one another, experience demonstrates that extensive coordination among Chinese infringers is quite common, and the evidence in the record is consistent with that experience. Lynch has not been able to conduct any discovery, yet his pre-suit marketplace investigation already reveals hard links among the storefronts. Two product listings, one on Amazon and one on Walmart, are each offered by two ostensibly independent Defendants under a single product identifier: Amazon ASIN B0CGX7DVH4 by Defendants 19 and 34, both under the invented brand "JOSBY," which Walmart Defendant 48 also uses; and Walmart item 16443556475 by Defendants 49 and 52, both under the brand "ArtDirect," which Walmart Defendants 50 and 51 also use. (Ference Dec. ¶¶ 4–6; Ex. 2, Parts B–C.) Five other invented brands recur in the same way, including "silanod" on

Defendants 2, 21, and 24. (*Id.* ¶ 6; Ex. 2, Part C.) Each product number (ASIN or item number) corresponds to a single product. (Ference Dec. ¶ 4.) Thus, when two storefronts sell products with the same product number, they are selling precisely the same product, not coincidentally similar products. (*Id.*) And a brand like "JOSBY" is an invented house mark chosen by the seller, which unrelated sellers would not share. (*Id.* ¶ 6.) In counsel's experience, each points to a common operator or, at a minimum, a common supplier. (*Id.* ¶¶ 4, 6.)

These links also answer the Order's observation that the similarities among the storefronts "point as much to 'copycat' infringement as to concerted action." (Order at 15 (citing *Glitch*, 2025 WL 1899266, at *3).) A copycat copies an image; it does not list under another seller's catalog number or adopt another seller's invented brand. Storefronts that do both are selling the same goods from the same source.

Nor do unrelated sellers converge on long, keyword-laden listing titles, yet sixteen groups of Defendants do. (Ference Dec. ¶ 7; Ex. 2, Part D.) Three Temu stores open their listing titles with the same distinctive string, "2D Flat 2D Wrapped Canvas Frame1pc," and three other pairs use identical or near-identical 26- to 38-word titles. (Ference Dec. ¶ 7; Ex. 2, Part E.) Shared text of that kind is exactly what courts accept as a link. *See Kuang v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 24-cv-12353, ECF No. 32 (N.D. Ill. Sept. 29, 2025) (holding joinder proper where six copyright defendants' listings used identical 17-word advertising text and "the same (false) brand name"); *Xie v. Entities & Individuals Identified in Annex A*, No. 24-cv-11081, ECF No. 13 (N.D. Ill. Feb. 27, 2025) (upholding joinder where "each defendant uses the same exact listing images and titles").

Taken together, these identifiers place sixty-two Defendants in close coordination with other Defendants. (Ference Dec. ¶ 9; Ex. 2, Part A.) Furthermore, because this evidence of

commonality rests only on what the Defendants display on their storefronts, the Defendants likely overlap in additional ways that only discovery will reveal. The extensive experience of Lynch's counsel in this area suggests that, in fact, coordination among Chinese infringers is the rule, not the exception.

One such infringer, Fu Zhou Hai Yi Tong E-Commerce Co., Ltd. ("Fu Zhou"), has been tied to more than 100 differently named storefronts through at least 50 subsidiaries, and those storefronts have been sued in at least seven Schedule A cases in this District and at least ten in the Northern District of Illinois. (Ference Dec. ¶ 11.) In *Comish v. Partnerships & Unincorporated Ass'ns Identified on Schedule A*, No. 25-cv-7049 (N.D. Ill. Sept. 16, 2025), the CFO and director of Fu Zhou candidly admitted that Fu Zhou deliberately establishes a separate entity for each online store the company owns and operates for tax reasons. (Ference Dec. ¶ 12 (Fu Zhou "establish[es] separate entities for different stores . . . primarily [for] tax considerations in China.").) Here, three Defendants have seller IDs previously identified as belonging to Fu Zhou. (Ference Dec. ¶ 8; Ex. 2, Part F.) Their presence raises an obvious question about the rest. These three surfaced only because Fu Zhou itself identified their seller IDs in other cases. Whether any of the other stores here belong to Fu Zhou or to another operator like it is information held by the Defendants, and only discovery will reveal it.

Courts in this District that have examined the Fu Zhou evidence have found it sufficient to support joinder. In *Jacobs*, five defendants appeared through a single attorney and moved to dismiss for misjoinder, insisting that they were "unaffiliated entities." *Jacobs*, ECF No. 58 at 2. That position collapsed once the plaintiff brought forward evidence of Fu Zhou's practice of opening multiple storefronts and its ties to three of the moving defendants. *Id.* at 4–5. Although the plaintiff had no comparable evidence tying the other two defendants to Fu Zhou, the court held

all five properly joined, finding that, "even before the benefit of discovery," the plaintiff had "assert[ed] facts that demonstrate a plausible connection between them, at least enough to explore in discovery." *Id.* at 3–4.

Furthermore, Fu Zhou's practices are not unique to that company; it is common for multiple stores on online marketplaces (with separate listed operators) to be owned and controlled by a single entity. (Ference Dec. ¶ 10.) Thus, the Complaint's coordination allegations rest on experience and evidence rather than boilerplate.

At a minimum, joinder should not be resolved against Lynch before any discovery has occurred. The Order asks for a factual basis connecting each Defendant. (Order at 18–19.) Before any discovery, the record already supplies one for sixty-two of them, and every Defendant took part in the same convergent occurrence: the copying of one artist's works for sale on the same three marketplaces. (Ference Dec. Exs. 1–2.) The facts that would further substantiate the Defendants' relationships, such as their true owners, shared seller and payment accounts, and common suppliers, are "peculiarly within the control" of the Defendants. *Doggie Dental*, 2021 WL 5411432, at *4. Courts in this District have accordingly declined to resolve joinder challenges in these cases before the parties could develop that evidence. *See Lusung v. Guangzhouzhaowenshangmaoyouxiangongsi*, No. 25-cv-989, 2025 WL 4111079 (W.D. Pa. Oct. 30, 2025) (denying motion to dismiss for misjoinder without prejudice to refiling after a period of limited discovery); *Jacobs*, 2026 WL 916227, at *2 (upholding joinder "recognizing that there has not yet been discovery on the merits of the parties' claims and defenses," where the plaintiff had shown a connection among the defendants "at least enough to explore in discovery"). Unlike the request rejected in *Qian*, which rested on "sparse and insufficiently supported joinder allegations," *Qian*, ECF No. 54 at 8, a request for discovery here would build on concrete evidence already in

the record. Accordingly, if the Court is inclined to look beyond the Complaint, Lynch respectfully requests leave to take targeted discovery from Amazon, Temu, Walmart, and the Defendants on common ownership, accounts, and suppliers before any Defendant is severed or dropped.

**II. Judicial Economy Supports Joinder.**

The Court has signaled that, even if the Complaint meets Rule 20's requirements, it may exercise its discretion to disallow joinder, stating that "even where joinder is permissible under Rule 20, a Court may exercise its discretion to sever or drop defendants if it concludes that doing so would further the interests of judicial economy without prejudice to any party," and that "allowing joinder in this case would undermine judicial economy, is not in the interest of justice, and hampers the Court's ability to conduct meaningful review of the merits of the case." (Order at 16 (quoting *Forcel Media*, 2025 WL 1665586, at *4).) Under these circumstances, however, disallowing joinder would frustrate the interests of judicial economy and cause extreme prejudice to Lynch with no benefit whatsoever to the Defendants or the Court.

As a starting point, no Defendant has yet appeared, and in cases like this one most never do. Separate actions would multiply every step that lies ahead: 189 complaints, 189 motions for injunctive relief and for alternative service, and, for the many Defendants who will not appear, 189 requests for default and 189 motions for default judgment. A single action allows the Court to resolve each of those steps in one order rather than 189. Furthermore, even if some Defendants appear and defend, joinder would still be far more efficient. Every claim in this action turns on the same artist's copyrights and the same questions of ownership, validity, willfulness, and remedy, so a single action supports judicial economy by letting the Court resolve those issues once rather than 189 times, the very duplication the logical-relationship test exists to avoid. *Transamerica*, 292 F.3d at 390; Fed. R. Civ. P. 1.

As the court noted in *Bose Corp. v. Partnerships & Unincorporated Ass'ns Identified on Schedule "A"*, 334 F.R.D. 511, 517 n.6 (N.D. Ill. 2020), "[r]equiring the filing of separate complaints could flood the courts with thousands of additional single defendant ... cases, with no difference in resolution of nearly every case in a practical sense. The only thing that will inevitably occur is the slowdown of adjudications of other lawsuits, or the decrease of filings of cases which on their face have alleged plausible violations ... ." Likewise, in *Merch Traffic, LLC v. Partnerships & Unincorporated Ass'ns Identified on Schedule A*, No. 25-cv-1180, ECF No. 36 at 1 (N.D. Ill. Apr. 17, 2025), the court explained that joinder of the defendants "'promote[s] judicial economy while protecting the interests of the parties,'" and that "joinder poses no risk of prejudice or unfairness to the various Defendants, who will each have an opportunity to defend against Plaintiff's claims in the same way they would if the cases were filed separately." *Id.*; *see Milwaukee Elec. Tool Corp. v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, No. 24-cv-12487, ECF No. 156 at 7 (N.D. Ill. May 28, 2025) (finding that "[t]he purpose of the joinder doctrine is to conserve judicial resources, reduce redundancy, and to save costs," and upholding joinder over 80 individually liable defendants). Thus, requiring these actions to proceed separately would be inefficient and burdensome for both Lynch and the Court.

## III. If the Court Deems Joinder Improper, the Proper Remedy is Severance, Not Dismissal.

Should the Court either find any Defendant misjoined or choose to exercise its discretion to disallow joinder, the proper remedy here is severance, not dismissal. "Misjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. The Rule instead creates two options when a court finds a defendant misjoined: (1) to "drop" the defendant "on just terms" or (2) to sever "any claim against a party." *Id.*

In *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006), the Third Circuit set the ground rules for when the district court may use these two options. The Third Circuit explained that a defendant the district court "drops" is dismissed without prejudice, as if the initial complaint against that defendant never existed. *Id.* That procedure exposes the plaintiff to the prejudice of commencing a new action, so a court may drop a defendant only when doing so is just, meaning it "*will not prejudice any substantial right.*" *Id.* at 846 (quoting *Sabolsky v. Budzanoski*, 457 F.2d 1245, 1249 (3d Cir. 1972)). Severance, in contrast, leaves the claims against a severed defendant intact, eliminating or reducing the potential for prejudice to the plaintiff. *Id.* at 845.

Earlier this year, in *Wood*, the Third Circuit applied those principles to a copyright case, vacating a dismissal without prejudice in part because the district court "did not explain why any misjoinder could not be cured by severance." 2026 WL 1397312, at *1, *4. The Third Circuit explained that a district court's Rule 21 authority "is discretionary but not unlimited," and its exercise requires "a reasoned analysis . . . based on the specific fact pattern presented by the plaintiffs and claims before the court." *Id.* at *3 (quoting *Avenatti v. Fox News Network LLC*, 41 F.4th 125, 131 (3d Cir. 2022), and *Hagan*, 570 F.3d at 157). "[I]n formulating a remedy for a misjoinder the judge is required to avoid gratuitous harm to the parties," and the district court is "duty-bound to prevent those consequences by severing rather than dismissing claims. If it fails in that duty, the remedy is appeal." *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000); *see DirecTV*, 467 F.3d at 846; *see also Rush v. Sport Chalet, Inc.*, 779 F.3d 973, 975 (9th Cir. 2015). A court therefore may choose dismissal only after explaining why severance will not do.

*Qian* read *Wood* as satisfied in part because the Court would "not dismiss this case in its entirety, as occurred in *Wood*, but will instead sever Plaintiff's claims and drop all but one Defendant from this case." *Qian*, ECF No. 54 at 7. Respectfully, that does not answer the question

*Wood* posed. A dropped defendant is dismissed without prejudice, as if the complaint against it never existed, *DirecTV*, 467 F.3d at 845, so whatever the order is called, the claims against 188 Defendants would end. *Wood* required an explanation of "why any misjoinder could not be cured by severance," 2026 WL 1397312, at *4, and that question must be answered for each dropped Defendant by weighing the prejudice that dropping, rather than severing, would inflict.

Courts confronting misjoinder in infringement cases routinely sever rather than drop or dismiss a defendant because dropping or dismissing a defendant would work gratuitous injury to the plaintiff. *Roadget Bus. Pte. Ltd. v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, 735 F. Supp. 3d 981, 986–87 (N.D. Ill. 2024) (severing because dismissal would lift the TRO and because "[e]ven dismissal without prejudice is an improper remedy if it would result in gratuitous injury to the plaintiff" (internal citations omitted)); *Laika,* 833 F. Supp. 3d at 920 ("Dismissal as a remedy here is inappropriate. Rule 21 militates against it, as does *Elmore's* command to avoid 'gratuitous harm' to the plaintiff.").

Dropping and dismissing all the Defendants except the first-named one would inflict the same kind of gratuitous injury here. This case has been pending since January 2026. Lynch has filed his Complaint, motions for injunctive relief, and a motion for alternative service that the Court denied without prejudice pending this response. (ECF Nos. 1, 2, 8, 11; Order at 18.) Dropping and dismissal would discard that work and force Lynch to refile 188 separate actions, each requiring a new complaint, evidentiary submission, motion for injunctive relief, and motion for alternative service, at a cost of $76,140 in filing fees alone, *see* 28 U.S.C. § 1914(a)–(b), all while the infringement continues unrestrained. Keeping only the first-named Defendant would also be arbitrary. Defendant No. 1's place at the top of Schedule A reflects nothing more than the order

in which Lynch listed the Defendants; the record in fact links it to Defendant No. 46. (Ference Dec. Ex. 2, Parts A, D.)

If the Court nonetheless concludes that the Defendants cannot all proceed in one action, Third Circuit precedent indicates that each Defendant should be severed into an action of its own, with each severed action proceeding under its own civil action number as a continuation of this one, on the existing record, preserving the original filing date, the Complaint, and the sealed evidentiary submissions, so that Lynch may renew his motions for injunctive relief and alternative service in each without starting over.

In sum, dismissal would discard the record, inflict the gratuitous harm that *DirecTV* and *Elmore* forbid, and invite the vacatur ordered in *Wood*. Accordingly, if the Court finds joinder improper, Lynch respectfully submits that the Court should sever the claims against each Defendant into a separate action that continues on the existing record, and dismiss none.

## CONCLUSION

The Complaint and the record satisfy Rule 20, and Lynch respectfully requests that the Court hold joinder proper and permit him to renew his motions for injunctive relief and alternative service in this action. In the alternative, if the Court concludes that any Defendant is misjoined, Lynch respectfully requests that the Court sever this action into separate actions, one for each Defendant, with each severed action continuing on the existing record, so that Lynch may renew those motions in each.

[SIGNATURE APPEARS ON FOLLOWING PAGE]

Respectfully submitted,

Dated: October 30, 2026

/s/ Stanley D. Ference III
Stanley D. Ference III
Pa. ID No. 59899
courts@ferencelaw.com

FERENCE & ASSOCIATES LLC
409 Broad Street
Pittsburgh, Pennsylvania 15143
(412) 741-8400 – Telephone
(412) 741-9292 – Facsimile

Attorneys for Plaintiff