IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRENT LYNCH,<br><br>Plaintiff,<br><br>v.<br><br>SCHEDULE A DEFENDANTS,<br><br>Defendants. | Civil Action No. 26-cv-79<br><br>(Judge Colville) |

**DECLARATION OF STANLEY D. FERENCE III IN SUPPORT OF PLAINTIFF'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE**

I, STANLEY D. FERENCE III, hereby declare as follows:

1. I am an attorney with the law firm of Ference & Associates LLC, located at 409 Broad Street, Pittsburgh, Pennsylvania 15143, and counsel of record for Plaintiff Brent Lynch ("Lynch") in the above-captioned action. I submit this declaration in support of Lynch's Response to the Court's order to show cause. (ECF No. 14.) The facts stated below are based on my personal knowledge and on records gathered and maintained by my firm in the ordinary course of this and related litigation, and if called as a witness, I could and would competently testify to them.

2. Attached as **Exhibit 1** is a chart, organized by Defendant number, identifying which of Lynch's five registered works each of the 189 Defendants infringed, as the Court directed. (ECF No. 14 at 18–19.) Attached as **Exhibit 2** is a summary, prepared under my supervision from Lynch's pre-suit marketplace investigation and from public filings in other actions, of common identifiers shared among the Defendants' storefronts on Amazon, Temu, and Walmart. Exhibit 2 groups together the Defendants that share at least one identifier with one another (Part A) and lists the underlying identifiers: each product identifier, brand name, and listing title shared by more

than one Defendant (Parts B–E), and the Defendant storefronts that Fu Zhou Hai Yi Tong E-Commerce Co., Ltd. ("Fu Zhou") or its representatives have identified as Fu Zhou accounts (Part F).

3. Under my supervision, my firm captured and preserved each Defendant's infringing product listing on Amazon, Temu, or Walmart as it was displayed to consumers in the United States. Those captures are filed under seal at ECF Nos. 8-8 through 8-12, and Exhibit 1 was prepared from them.

4. Amazon assigns each product detail page a unique alphanumeric code, the Amazon Standard Identification Number ("ASIN"). Under Amazon's catalog rules, a single ASIN corresponds to a single product: a seller offering an existing product must list it under that product's ASIN, and a new ASIN issues only for a different product. Walmart likewise assigns its own item identifier to each product on Walmart.com. Two storefronts offering a listing under the same identifier are therefore offering the identical product, not merely a similar one. In my experience, a shared identifier ordinarily means the storefronts draw from a common source or operate under common control.

5. Exhibit 2, Part B identifies two product listings, each offered by two different Defendants under the same product identifier: the Amazon listing bearing ASIN B0CGX7DVH4 is offered by Defendants 19 and 34, and the Walmart listing bearing item identifier 16443556475 is offered by Defendants 49 and 52.

6. A "brand name" is the brand a seller assigns to its listing. On these marketplaces, a brand is either the mark of the product's manufacturer or a house mark the seller assigns to itself, often a coined string of letters. The brands at issue here are of the second kind: invented strings, not established brands sold through authorized-distributor networks. Exhibit 2, Part C identifies

seven such brands, each recurring across two to four Defendant storefronts. For example, "ArtDirect" appears on the Walmart storefronts of Defendants 49, 50, 51, and 52; "JOSBY" on Defendants 19, 34, and 48; and "silanod" on Defendants 2, 21, and 24. In my experience, the recurrence of a coined brand across ostensibly independent storefronts reflects a common operator or, at a minimum, a common supplier.

7. Exhibit 2, Part D identifies sixteen groups of Defendants whose listing titles are identical in full or through at least their first nine words; in four of those groups the titles are identical in full. Twenty-four Defendants also name Lynch himself in their listing titles, and three of them, Defendant 28 on Amazon and Defendants 178 and 179 on Temu, open their titles with the same phrase: "Brent Lynch of Evening Lounge Figurative Poster Canvas Wall Art . . . ." Exhibit 2, Part E identifies further listing titles that are identical but for one to three words, or that open with the same distinctive string. Three Temu Defendants (Nos. 113, 145, and 148), for example, open their listing titles with the same string, "2D Flat 2D Wrapped Canvas Frame1pc," and Defendants 108 and 140 use the same 33-word listing title, except that No. 140 adds the leading words "Extra Large Size." Sellers write their own listing titles, typically as long strings of search keywords. In my experience, titles that match word for word across ostensibly independent storefronts reflect a shared listing template or a common source.

8. Defendant 159 (Beautiful poster style) bears the same Temu seller ID as one of the nineteen accounts that Fu Zhou's counsel identified, by seller ID, as Temu seller accounts owned by Fu Zhou. *Friend v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 1:25-cv-23468 (S.D. Fla.), ECF No. 43-1 at 1; ECF No. 43-3 ¶ 4. Defendants 79 (Life is so wonderful) and 134 (Three posters) bear seller IDs that Fu Zhou's general manager identified as Fu Zhou accounts.

*Comish v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 1:25-cv-07049 (N.D. Ill.), ECF No. 31-1 ¶ 3. (Exhibit 2, Part F.)

9. Exhibit 2, Part A groups the Defendants, treating as connected any two Defendants that share at least one of the identifiers listed in Parts B through F, even if they share nothing else. On that basis, sixty-two of the 189 Defendants fall into twenty-two groups of two to six storefronts each; the three Fu Zhou storefronts form one of them. Defendant No. 1 is among them: its listing title is identical to that of Defendant No. 46 but for the stated size. The groups are preliminary. Before discovery, I cannot determine whether particular groups are connected to one another, or whether Defendants not listed in Part A are connected to any group.

10. The pattern reflected in Exhibit 2 is consistent with how these online infringement operations are structured, as my firm has repeatedly documented in related Schedule A litigation. A single operator commonly controls many separate storefronts that are presented to the public as independent sellers.

11. For example, in a series of related Schedule A cases, a single Chinese entity—Fu Zhou—has been identified, through corporate disclosures and through declarations of its own representatives, as the owner and operator of scores of seemingly independent storefronts bearing different seller names. A summary prepared under my supervision from those disclosures and declarations, and filed in *Jacobs v. Xuchengqian*, No. 2:25-cv-1403-WSS, ECF No. 56-1 (W.D. Pa.), identifies 50 companies that have been identified as belonging to Fu Zhou, through which Fu Zhou has operated more than 85 differently named Temu storefronts. Most of those companies operate a single storefront; others operate groups of storefronts, as many as eight. The same summary shows that storefronts tied to Fu Zhou companies have been named as defendants, and have appeared through a single attorney to move to dismiss for misjoinder, in at least seven

Schedule A cases in this District: Nos. 2:25-cv-1403, 2:25-cv-1406, 2:25-cv-1433, 2:25-cv-1436, 2:25-cv-1487, 2:25-cv-1553, and 2:25-cv-1696 (W.D. Pa.). A companion summary filed in *Hein v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 1:25-cv-12608, ECF No. 34-2 (N.D. Ill.), shows storefronts tied to Fu Zhou named as defendants in at least ten more Schedule A cases in the Northern District of Illinois. Across the two summaries, more than 100 differently named storefronts have been tied to Fu Zhou, and the storefronts that appeared alongside them through common counsel in those cases number in the hundreds.

12. These operators deliberately fragment a single business into many separate legal entities and storefronts. Fu Zhou's CFO and director admitted that Fu Zhou "establish[es] separate entities for different stores . . . primarily [for] tax considerations in China," and that, "for tax efficiency, [it] generally establish[es] a separate legal entity for each store." *Comish*, ECF No. 47-1 ¶ 7. This tax-driven structure explains why a single operator routinely appears in these cases as many separate, "independent"-looking storefronts.

13. Consistent with that structure, in other Schedule A matters my firm has litigated, individual operators have been found to control large numbers of seemingly independent storefronts under dozens of company names. The infringing products, moreover, are typically manufactured by and sourced from common manufacturers or print-on-demand suppliers, and the storefronts typically employ substantially similar listings, images, and search-optimization keywords to target the same artist's works. The Complaint alleges the same here. (ECF No. 1 ¶¶ 4, 15, 17, 18, 34, 37.)

14. Taken together, the allegations of the Complaint and the record evidence summarized in Exhibits 1 and 2 and described above reflect the same kinds of connections and

coordinated relationships that have supported joinder of Schedule A defendants in related cases. The full extent of those relationships cannot be mapped before any discovery has occurred.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: October 30, 2026

*/s/ Stanley D. Ference III*
Stanley D. Ference III